**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **CHARMAINE MERIWETHER AND** | : | **CIVIL ACTION FILE NO.** |
| **QUIONA JACKSON, individually and** | : | 2:16-cv-00027-WCO |
| **On behalf of all others similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **ANGELS ALL AROUND HOME CARE** | : | |
| **SERVICES INC., A/K/A ANGELS ALL** | : | |
| **AROUND, INC., AND BAMBI** | : | |
| **KIMMES,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendants.** | : | |

## COMPLAINT

COME NOW Plaintiffs, Charmaine Meriwether and Quiona Jackson (hereinafter "Plaintiff Meriwether" and "Plaintiff Jackson," hereinafter collectively "Plaintiffs"), by and through their undersigned attorneys, and assert these claims individually and on behalf of all other current and former employees who are similarly situated, under the Fair Labor Standards Act, 29 U.S.C. Section 201 *et seq.* ("FLSA") for overtime compensation violations, failure to pay minimum wage as set forth below:

### JURISDICTION AND VENUE

1.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 216(b).

1

2.

Venue is appropriate in this Court as one or more defendants resides within this judicial district.

3.

Defendants Angels Around Home Care Services, Inc., also known as Angels All Around, Inc., (hereinafter "AAUI"), Bambi Kimmes (hereinafter "Defendant Kimmes") (hereinafter collectively "Defendant Employer") are subject to the jurisdiction of this Court.

**PARTIES**

4.

Plaintiffs are former employees of Defendant Employer.

5.

Defendant Kimmes and AAUI are residents of the state of Georgia.

6.

Defendant Kimmes may be served with service of process at 125 Enterprise Drive, Suite C, Cumming, Georgia  30040, in the event that service of process is not waived.

7.

Defendant AAUI may be served through its registered agent, Dwight D. Gersten, at 3025 Lakeside Drive, Cumming, Georgia  30041, in the event that service

of process is not waived.

8.

Defendant AAUI and Defendant Kimmes, individually, are each an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

9.

Defendants AAUI and Defendant Kimmes acted directly or indirectly in their own interest as an employer in interactions with Plaintiffs and controlled the terms and conditions of employment of Plaintiffs on a day-to-day basis.

10.

Defendants AAUI and Defendant Kimmes controlled the working hours, conditions of employment, frequency and amount of Plaintiffs' compensation, assigning jobs to Plaintiff, as well as making the decision to hire or fire Plaintiffs.

11.

Defendant AAUI is an alter ego of Defendant Kimmes, because Defendant AAUI has not observed corporate formalities necessary to be a separate legal entity,

12.

Defendant AAUI is an alter ego of Defendant Kimmes, because Defendants AAUI and Kimmes have intermingled funds and assets.

## FACTUAL ALLEGATIONS
13.

This action is brought individually and on behalf of all other similarly situated

persons against Defendant Employer for violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq. ("FLSA"), based upon Defendant Employer's common policy of misclassifying employees as FLSA-exempt employees and failing to properly compensate its employees for time worked, including paying overtime wages earned by Plaintiffs, and failing to pay Plaintiffs minimum wage for all hours worked.

14.

Defendant Employer was engaged in interstate commerce through the operation of a website providing personal care and domestic services for individuals who are aged, disabled, or request personal care or domestic services, and by obtaining contracts to provide personal care and domestic services with interstate insurance providers.

15.

Defendant Employer utilizes the channels of interstate commerce such as interstate telephone, interstate electronic communications, interstate banking, and the U.S. Mail to obtain clients, communicate with clients, hire employees, bill for services provided, have employees create time records, and solicits clients who are eligible for Medicare and Medicaid, as well as client who have health insurance through out-of-state and national health insurance companies.

16.

Since 2012, Defendant Employer has had a volume of business in excess of $500,000 per year.

17.

Plaintiffs were engaged in interstate commerce on a regular part of Plaintiffs' job, as Plaintiffs would receive job assignments through the interstate telephone systems and other interstate communication systems, and would receive documents through the U.S. Mails, and were engaged in interstate commerce through the regular use of the U.S. Mail, interstate telephone, and other interstate communications for Defendant Employer.

18.

Plaintiffs were FLSA-covered employees through enterprise coverage.

19.

Plaintiffs were also FLSA-covered employees through individual coverage as domestic employees providing personal services and domestic services to Defendant Employer's clients at the direction of Defendant Employer.

20.

Plaintiffs and all other similarly situated employees were misclassified by Defendant Employer as FLSA exempt employees and/or independent contractors.

21.

While Plaintiffs were classified as providing companionship services, Plaintiffs were providing such services through a third party, Defendant Employer, and Defendant Employer did not qualify for a FLSA exemption for the overtime or minimum wage provisions of the FLSA for Plaintiffs or any other similarly situated employees.

22.

While Plaintiffs were employed by Defendant Employer, Plaintiffs spent more than 20 percent of the time they were employed performing general domestic services, such as cleaning kitchens, doing laundry for the entire household, and performing other domestic chores which were not included in companionship services under 29 C.F.R. Section 552.6.

23.

Plaintiff Jackson's employment with Defendant Employer began around September 13, 2015.

24.

Plaintiff Meriwether's employment with Defendant Employer began around October 26, 2015.

25.

Plaintiff Jackson was given an employee handbook by Defendant Employer.

26.

Plaintiff Meriwether was required to pay Defendant Employer for a background investigation for Plaintiff as a condition precedent to being hired; Plaintiff Jackson was required to submit evidence of a recent background investigation as a condition precedent to being hired.

27.

Defendant Employer requiring Plaintiff Meriwether and other similarly situated employees to pay for a background investigation as a condition of employment resulted in Plaintiff Meriwether and other similarly situated employees earning less than minimum wage for all hours worked.

28.

Plaintiffs were assigned to a client sites for consecutive 24-hour shifts, and were directed not to leave the client location until relieved from duty by another employee.

29.

Plaintiffs were directed by Defendant Employer to provide client services of a general domestic nature for the entire household, such as cleaning, laundry, sweeping, mopping, vacuuming, and other household chores.

30.

Shortly after Plaintiff Meriwether began working for Defendant Employer,

her co-workers began to tell Plaintiff Meriwether that Defendant Employer would frequently not pay employees for all hours worked, or refuse to pay employees altogether.

31.

Plaintiff Meriwether, also, began experiencing issues with not being paid overtime for work in excess of 40 hours per week and being paid less than minimum wage for all hours worked.

32.

Plaintiff Jackson also began experiencing issues with not being paid overtime for work in excess of 40 hours per week and being paid less than minimum wage for all hours worked.

33.

Plaintiff Meriwether made a complaint to Defendant Employer of not being paid overtime and minimum wage as required by the FLSA, and made multiple complaints about not being paid timely.

34.

Plaintiff Jackson also made complaints to Defendant Employer about not being paid overtime and minimum wage as required by the FLSA.

35.

During each week that Plaintiffs worked for Defendant Employer, Plaintiffs

were paid less than the applicable minimum wage for all hours worked, and Plaintiffs' effective hourly pay rate was usually around $5.00 per hour because Defendant Employer paid Plaintiffs a set day rate for work, regardless of the actual number of hours that Plaintiffs were required to work.

36.

Because Defendant Employer utilized a day rate which was less than minimum wage, during each week that Plaintiffs worked for Defendant Employer Plaintiffs were not paid one and one-half times their usual hourly rate for hours worked in excess of 40 hours per week.

37.

Plaintiffs, and other similarly situated employees, were directed by Defendant Employer to use the client's home phone to call a specific telephone number at certain times within the work shift to improperly record the time that Plaintiffs were working; Plaintiffs were directed to call a toll-free number, enter an employee identification code, and enter a client code to record only a portion of the hours worked.

38.

Defendant Employer required Plaintiffs and other similarly situated employees to call the automated system at a specific time each day to clock in and to create an inaccurate record of the number of hours worked.

39.

Defendant Employer also directed employees to submit weekly time sheets with only limited hours being listed, and required that the time sheets be signed by the client to reflect less time being worked than Plaintiffs and the other similarly situated employees were being required to work.

40.

As a result of Defendant Employer's instructions, Plaintiffs and the other employees classified as home healthcare workers who performed services for clients of Defendant Employer were also directed to report less time on their written timecards than Plaintiffs actually worked.

41.

Defendant Employer also prohibited Plaintiffs and other similarly situated employees from leaving a client site until another relieved from duty by another employee.

42.

Often, however, the next employee would fail to report in a timely manner, would call out, or Plaintiffs and other similarly situated employees would be instructed to beyond the scheduled end of the work shift by Defendant Employer, without being properly compensated for the additional time.

43.

Defendant Employer had actual knowledge that Plaintiffs and the other persons employed by Defendant Employer to perform services at client locations were being directed to under report the number of hours worked

44.

Neither Plaintiffs nor the other employee classified as a home healthcare worker who performed services for clients of Defendant Employer were subject to any exemption from the minimum wage or overtime requirements of the FLSA.

45.

For example, Plaintiffs were directed to record a daily clock out time that was approximately 12 hours after their start time, and were paid for set shifts, despite other employees not showing up to relieve Plaintiffs, and Defendant Employer requesting that Plaintiffs remain at the client site until other employees could be located to relieve Plaintiff.

46.

Additionally, despite being woken up approximately five to seven times during the night, and not being able to go to bed until after 11:00 p.m. or later, Defendant Employer refused to compensate Plaintiffs and other employees classified as home healthcare workers who performed services for clients of Defendant Employer for more than 12 hours per day.

11

47.

Plaintiffs and other employees classified as home healthcare workers who performed services for clients of Defendant Employer were required to stay with the client overnight, and typically stayed three full, consecutive days with the client at Defendant Employer's direction.

48.

After Plaintiffs complained about not being paid, Plaintiff were told that they would be paid; Defendant Employer, however, has failed to pay Plaintiffs and other similarly situated employees minimum wage for all hours worked and overtime at one and one-half times Plaintiffs' regular hourly rate for all hours worked in excess of 40 hours per week.

49.

Defendant Employer, again, told Plaintiff Meriwether that Plaintiff Meriwether would be paid, and that Plaintiff Meriwether should review the packet she received in orientation; Plaintiff Meriwether, however, had not received a packet in orientation that provided pay dates, or any explanation why Plaintiff Meriwether was not being paid.

50.

Plaintiff Meriwether was constructively discharged around November 13, 2015, when Defendant Employer refused to pay Plaintiff Meriwether minimum

wage and overtime for the hours Plaintiff Meriwether had worked.

51.

Plaintiff Jackson was constructively discharged around November 19, 2015, when Defendant Employer refused to pay Plaintiff Jackson minimum wage and overtime for the hours Plaintiff Jackson had worked.

52.

Around the end of December, 2015, Defendant Employer asked Plaintiff to work for another client.

53.

Plaintiff Jackson told Defendant Employer that Plaintiff Jackson still had not been paid for hours worked before, and Defendant Employer told Plaintiff that it owed her approximately $20.00 for unpaid overtime.

54.

Plaintiff Jackson did not agree to work for Defendant Employer, and insisted that Plaintiff be paid for work already performed.

55.

In retaliation for Plaintiff's complaints of unpaid minimum wage and overtime, Defendant Employer gave the client Plaintiff Jackson's phone number and told the client that Plaintiff Jackson was supposed to be staying with the client, but would not agree to go the client's residence.

56.

The client called Plaintiff Jackson crying, saying that the client desperately needed help, and begged Plaintiff to come help her.

57.

Plaintiff Jackson agreed to help the client since there was a dire need and the client was extremely upset; Plaintiff Jackson contacted Defendant Employer and accepted the assignment, but told Defendant Employer that Plaintiff had to be paid for working.

58.

Defendant Employer subsequently refused to pay Plaintiff for the additional day of work in retaliation for Plaintiff's complaints of unpaid minimum wage and unpaid overtime.

59.

Defendant Employer willfully refused to compensate Plaintiff Meriwether and Plaintiff Jackson at minimum wage for all hours worked and at one and one-half times her regular hourly rate for all hours worked in excess of 40 hours per week in retaliation for their complaints of FLSA violations.

60.

Defendant Employer, for its own pecuniary gain, implemented a common scheme of not paying Plaintiffs and the other similarly situated employees for all

hours worked, and directing employees to only report specific hours as being worked, despite having actual knowledge that employees such as Plaintiffs were being required to work substantially more hours that Defendant Employer was allowing the employee to report.

61.

Defendant Employer, pursuant to the FLSA, had a duty to pay Plaintiffs and all other similarly situated persons one and one-half times their regular hourly rate for time worked in excess of forty (40) hours per week and minimum wage for all hours worked.

62.

Defendant Employer misclassified Plaintiffs and all other similarly situated persons as FMLA-exempt, salaried employees for Defendant Employer's own pecuniary gain and financial benefit.

63.

Defendant Employer did not create or maintain accurate records of the number of hours worked by Plaintiffs or any other similarly situated employees during their employment with Defendant Employer.

64.

Defendant Employer's conduct in failing to pay Plaintiffs, and all other similarly situated employees minimum wage for all hours worked and overtime for

all hours worked in excess of 40 hours per week constitutes a willful violation of the FLSA, entitling Plaintiffs to all relief afforded under the FLSA, including the award of liquidated damages and reasonable costs of litigation and attorneys' fees.

## COUNT ONE: VIOLATION OF 29 U.S.C. § 207
### (Minimum Wage Violations)

65.

Paragraphs 1 through 64 are incorporated herein by this reference.

66.

Defendant Employer's failure to compensate Plaintiffs and the other similarly situated employees for time actually worked at minimum wage is a violation of Sections 207 of the Fair Labor Standards Act of 1938, as amended.

67.

Such violation is intentional and willful for the financial benefit of Defendant Employer.

68.

Said violation gives rise to a claim for relief under the FLSA for Plaintiffs and each member of the class they represent for unpaid overtime compensation from three years preceding the filing of this Complaint, liquidated damages in an amount equal to the unpaid compensation, and reasonable attorney's fees and expenses of litigation, pursuant to 29 U.S.C. § 216.

## COUNT TWO: VIOLATION OF 29 U.S.C. § 207
### (Overtime Violations)

69.

Paragraphs 1 through 68 are incorporated herein by this reference.

70.

Defendant Employer's failure to compensate Plaintiffs and the other similarly situated employees for time actually worked in excess of 40 hours per week on the basis of one and one-half times the regular hourly rate of pay is a violation of § 207 and 215 of the Fair Labor Standards Act of 1938, as amended.

71.

Such violation is intentional and willful for the financial benefit of Defendant Employer.

72.

Said violation gives rise to a claim for relief under the FLSA for Plaintiffs and each member of the class they represent for unpaid overtime compensation from three years preceding the filing of this Complaint, liquidated damages in an amount equal to the unpaid compensation, and reasonable attorney's fees and expenses of litigation, pursuant to 29 U.S.C. § 216.

## COUNT THREE: VIOLATION OF 29 U.S.C. § 215
## (ILLEGAL RETALIATION)

### 73.

Paragraphs 1 through 72 are incorporated herein by this reference.

### 74.

Plaintiffs engaged in protected activity under the FLSA and the National Labor Relations Act ("NLRA") by asking that they be paid overtime for all hours worked, paid timely, and by contacting other employees to determine if Plaintiffs were entitled to overtime pay under the FLSA.

### 75.

Within a few weeks of Plaintiffs' complaints to Defendant Employer about not being paid minimum wage and overtime, Defendant Employer constructively discharged Plaintiffs by withholding Plaintiffs' pay and by refusing to pay Plaintiffs minimum wage or overtime as required by the FLSA.

### 76.

After Plaintiffs' complaints to Defendant Employer about not receiving overtime pay, Defendant Employer began scheduling Plaintiffs for less work, would give Plaintiffs less advance notice of shift changes or reassignments, and became highly critical of Plaintiffs' job performance and refused to address any unpaid time

with Plaintiffs.

77.

Defendant Employer constructively terminated Plaintiffs' employment in retaliation for Plaintiff Meriwether's complaints about not being paid and Plaintiff Jackson's support of Plaintiff Meriwether's complaints.

78.

Defendant Employer's violation of Section 215 of the FLSA gives rise to a claim for relief under the FLSA, including but not limited to back pay, front pay, compensatory damages, lost wages, liquidated damages equal to the lost wages, reasonable attorney's fees, and an award of reasonable attorney's fees.

**WHEREFORE**, Plaintiffs request this Court:

(a)    take jurisdiction of this matter;

(b)    issue an Order holding Defendants AAUI and Kimmes to be an "employer" as that term is defined under the FLSA;

(c)    grant a trial by jury as to all matters properly triable to a jury;

(d)    issue a judgment declaring that Plaintiffs and all other similarly situated employees were covered by the provisions of the FLSA and that Defendants have failed to comply with the requirements of the FLSA;

(e)    award Plaintiffs equitable relief in the form of front pay in lieu of reinstatement and grant Plaintiffs an award of back pay from the date

19

of Plaintiffs' termination by Defendant Employer;

(f)    award Plaintiffs payment for each overtime hour worked in the three

years preceding the filing of this Complaint, calculated at one and one-

half times the regular rate, plus liquidated damages equaling 100% of

overtime due to Plaintiff, as required by the FLSA;

(g)    award Plaintiffs prejudgment interest on all amounts owed;

(h)    award Plaintiffs their reasonable attorney's fees and costs;

(i)    appoint a permanent monitor to review Defendant Employer's

compliance with the requirements of the FLSA each pay period,

(j)    enter a permanent injunction prohibiting Defendant Employer from

classifying any "skip tracers" as FLSA-exempt, salaried employees and

prohibiting Defendant Employer from engaging in any retaliatory acts

for activities protected under the FLSA;

(k)    award Plaintiffs backpay and front pay in lieu of reinstatement; and

(l)    award any and such other further relief this Court deems just, equitable

and proper.

Respectfully submitted, this 8th day of February, 2016.

/s/ J. Stephen Mixon, Esq.
J. Stephen Mixon, Esq.
Georgia Bar No. 514050
Counsel for Plaintiff

/s/ Alex R. Roberson, Esq.

20

Alex R. Roberson, Esq.
Georgia Bar No. 558117
Counsel for Plaintiff

MILLAR & MIXON, LLC
1691 Phoenix Boulevard, Suite 150
Atlanta, GA 30349
Telephone: (770) 955-0100
Facsimile: (678) 999-5039